JS-6, O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL LEBOW,

          Plaintiff,

    v.

HUSTON BUICK GMC CADILLAC, INC.,

          Defendants.

Case No.: 2:22-cv-01062-MEMF(KSx)

**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND [ECF NO. 15]**

    Before the Court is the Motion to Dismiss or, in the Alternative, Motion to Transfer filed by Defendant Huston Buick GMC Cadillac, Inc. ECF No. 15. For the reasons stated herein, the Court GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

/ / /

/ / /

## BACKGROUND

I. <u>Factual Background</u>

    a. **Michael Lebow's identity was used to purchase vehicles from Huston Buick GMC Cadillac, Inc.[1]**

In January 2020, Defendant Huston Buick GMC Cadillac, Inc. ("Huston Buick") allowed a third party to commit identity theft by purchasing one or more vehicles from Huston Buick using Plaintiff Michael Lebow's ("Lebow") identity. SAC ¶ 10. Huston Buick ran Lebow's credit report seven times without his permission from January 18 to January 20, 2020, resulting in thirteen inquiries made on his credit history. *Id.* ¶¶ 12–15. When Huston Buick ran Lebow's credit report, it possessed a copy of his California driver's license, which listed his residence in California. Lebow Decl. ¶ 6. Moreover, the first time Huston Buick ran his credit report, the report listed his address as being within California. *Id.* ¶ 7. On or about September 15, 2020, Lebow discovered that his credit score had dropped over fifty points and contained various inquiries and loans that did not belong to him. *Id.* ¶ 19. The credit application submitted by the identity thief listed a Florida address and contained a 561 area code that differed from Lebow's 310 area code. *Id.* ¶ 29. Lebow has never lived in Florida. *Id.* He has also never been to Huston Buick's place of business nor conducted business with Huston Buick. *Id.* ¶ 3.

    b. **Huston Buick GMC Cadillac, Inc. conducts its business almost solely in Florida.[2]**

Huston Buick's principal place of business has always been in Lake Wales, Florida. Huston Decl. ¶ 4. Huston Buick currently operates four automobile dealerships, all of which are in Florida. *Id.* Huston Buick holds an automobile license issued by the Florida Department of Highway Safety and Motor Vehicles and operates under federal and Florida law. *Id.* Huston Buick has never operated

---

[1] The factual allegations set forth in this section are taken from the Second Amended Complaint. ECF No. 14 ("Second Amended Complaint" or "SAC"), as well as Michael Lebow's allegations in the declaration attached to his Opposition, ECF No. 16-1 ("Lebow Decl."). The SAC is substantially similar to the FAC, with the addition of the following: (1) one sentence at the end of ¶ 20; (2) one sentence at the end of ¶ 21; (3) ¶¶ 43–56; and (4) a statement in ¶ 82 noting that Plaintiff reserves the right to a trial by jury per the Seventh Amendment of the Constitution of the United States of America.

[2] The facts set forth below are taken from Huston Buick's allegations in the declaration attached to its Motion. ECF No. 15-2 ("Huston Decl.").

any locations in California, held any licenses issued by the state of California, or been authorized to do business within the state of California. *Id.* ¶ 5. Huston Buick has not, since the current owner bought the company in 2004, paid for any advertising targeting California markets and focuses its marketing and sales efforts in Florida. *Id.* ¶ 6. Huston Buick's website allows for online automobile purchases; however, the majority of Huston Buick's customers are Florida residents, and any sales made to non-Florida residents are "exceedingly rare and incidental" and transacted under federal and Florida law. *Id.* ¶ 7.

## II. Procedural History

On January 11, 2022, Lebow filed his First Amended Complaint in the Superior Court of California, County of Los Angeles. *See generally* ECF No. 1-1 ("FAC"). Huston Buick was served on January 19, 2022, and removed this action to federal court on February 16, 2022, citing diversity jurisdiction under 28 U.S.C. § 1441(b). ECF No. 1. On February 23, 2022, Huston Buick filed a Motion to Dismiss or, in the Alternative, Motion to Transfer. ECF No. 8. On April 22, 2022, the Court granted the Motion to Dismiss for lack of personal jurisdiction with leave to amend. ECF No. 13. On May 15, 2022, Lebow filed his Second Amended Complaint, asserting the same three causes of action previously alleged in the FAC: (1) violation of the Rosenthal Fair Debt Collection Practice Act, CAL. CIV. CODE § 1788, *et seq.*; (2) violation of the California Consumer Credit Reporting Agencies Act, CAL. CIV. CODE § 1785.25(a); and (3) violation of the California Identity Theft Law, CAL. CIV. CODE § 1798.92, *et seq. See generally* SAC. The SAC included the following additional information:

> 20. Plaintiff had not purchased or been shopping for any vehicles at any time between 2020 and 2021 with Defendant or ever at all. Specifically on the dates of the purchased purportedly made by Plaintiff, Plaintiff was also present in California where he made bank withdrawals.
> 21. The information that Defendant reported about Plaintiff is derogatory as it was inaccurate and caused and continues to cause Plaintiff damages. Plaintiffs [sic] damages were not only actual but in the information itself and its accuracy which are demonstrable.
> . . .
> 43. Moreover, the harm that Plaintiff that Defendant caused through the conduct herein described was immediate upon assisting the identity theft in using Plaintiff's identity in purchasing an automobile and obtaining financing as Plaintiff's credit was substantially diminished in the State of California the moment Defendant made

several unauthorized hard inquiries into his credit and proceeded to report said inquiries on his credit.
44. Also, Defendant continued to report on Plaintiff's credit well after the initial January of 2020 inquiries.
45. Plaintiff is currently seventy-seven (77) years of age, and he was seventy-five (75) years of age at the time that Defendant first facilitated the illegal use of his identity to purchase the automobile from Defendant and obtain financing, and Plaintiff therefore qualifies as "elderly" as that term is defined in every State in the Union as well as under the Laws of the United States of America.
46. Persons over the age of sixty (60) years are the most common Identity Theft victims.
47. It is well-known and open, publicly available information that California Residents are the most common Identity Theft victims with 147,382 reported instances of Identity Theft of the identities of California Residents.
48. Defendant knew both that Plaintiff was a California Resident and that Plaintiff was 75 years of age at the time that it facilitated the identity thief's illegal purchase of a vehicle from Defendant and financing thereof as the identity thief used a driver's license that showed both Plaintiff's state of residence and age to Defendant.
49. Plaintiff alleges upon information and belief that Defendant failed to maintain policies and procedures reasonably calculated to protect identity theft victims and avoid facilitating the purchase and financing of its automobiles from identity thieves and consequent harm.
50. Plaintiff alleges upon information and belief that Defendant willfully, with extreme gross recklessness, and/or with complete disregard for the truth of the matter disregarded all red flags and went forward with the transaction with the identity thief and did so because it was more profitable for Defendant.
51. But for Plaintiff's residence in the State of California, he would not have become a victim of Identity Theft or he would have been substantially less likely to become a victim of Identity Theft as such residents pose the most attractive victims to identity thieves in Florida because the physical distance makes it prohibitively difficult for victims to stop transactions in their wake as well as assist in the coordination of effective law enforcement efforts.
52. Plaintiff alleges upon information and belief including without limitation Defendant's own admissions that Defendant sells and facilitates the financing of automobiles to California Residents.
53. Plaintiff alleges upon information and belief that Defendant is a franchise dealership and financier of GENERAL MOTORS COMPANY aka GENERAL MOTORS LLC which is a registered business entity in the State of California and that Defendant expressly avails itself of the Laws of the State of California governing consumer purchases and financing transactions including those transacted through or in connection with Defendant's website.
54. Plaintiff alleges upon information and belief, including without limitation the fact that anyone would immediately recognize that the person purchasing and applying for financing for the vehicle is not the person on Plaintiff's driver's license, that Defendant facilitated the identity thief's illegal purchase and financing completely or substantially online.
55. Furthermore, Plaintiff alleges upon information and belief that Defendant specifically transacts with California Residents as well as residents of other similarly situated States via online purchases because residents of such States are commonly willing to pay a premium for vehicles and commonly pay a price for vehicles in Defendant's

> vehicles that is over and above the price that local consumers are willing and/or able to pay, and Defendant therefore reaps a substantial benefit from transacting online with California Residents and the residents of other states.
> 56. Defendant ignored any and all red flags clearly indicating that the person making the purchase was not actually Plaintiff and did so all for the sake of profit.

*Id.* ¶¶ 20–21, 43–56. On May 27, 2022, Huston Buick filed the instant Motion to Dismiss or, in the Alternative, Motion to Transfer regarding the Second Amended Complaint. ECF No. 15 ("Motion" or "Mot."). The Motion was fully briefed on June 16, 2022. *See* ECF No. 16 ("Opposition" or "Opp'n"), 17 ("Reply"). On June 30, 2022, the Court heard oral argument on this matter.

## **MOTION TO DISMISS**

### I.  **Applicable Law**

Under Federal Rule of Civil Procedure 12(b)(2), a party may file a motion to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). In the face of a 12(b)(2) motion, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. (Western States)*, 715 F.3d 716, 741 (9th Cir. 2013). In determining whether a complaint lacks personal jurisdiction, a court may consider evidence presented in affidavits and may order discovery on the jurisdictional issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds as discussed in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

"However, 'when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).[3] Under such circumstances, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). Although the court may not assume the truth of allegations in a pleading which are contradicted by affidavit, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal

---

[3] Neither party requested an evidentiary hearing or jurisdictional discovery with respect to the instant motion.

jurisdiction exists. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Unocal*, 248 F.3d at 922.

Moreover, when no applicable federal statute governing personal jurisdiction exists, as is the case here, the district court applies the law of the state in which the district court sits. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). Accordingly, the Court looks to "California's longarm statute [which] allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Picot*, 780 F.3d at 1211 (quoting *Daimler*, 571 U.S. at 125); *see also* CAL. CIV. PROC. CODE § 410.10.

Due process allows courts to exercise jurisdiction only over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be either general or specific. *See Picot*, 780 F.3d at 1211; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984).

A district court should generally grant leave to amend freely. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id.*

a. **General Jurisdiction**

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Helicopteros*, 466 U.S. at 414–16), *modified*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). The Ninth Circuit has recognized this as "an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *see also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th

Cir. 2000) (noting that the standard for establishing general jurisdiction is "fairly high" and requires contacts "that approximate physical presence").

### b. Specific Jurisdiction

Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer general jurisdiction, a court may exercise specific jurisdiction over the defendant. *Picot*, 780 F.3d at 1211. Specific jurisdiction exists where the claim for relief arises directly from a defendant's contacts with the forum state. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). For a court to exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211.

The plaintiff bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff is able to do so, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair under the third prong. *Id.*

### i. Purposeful Direction or Availment

In tort cases, the Ninth Circuit requires a showing of purposeful direction, rather than purposeful availment. *Mavrix Photo*, 647 F.3d at 1228. Purposeful direction is analyzed under the *Calder* "effects" test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1228 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

## II. Discussion

Huston Buick argues that Lebow's SAC should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because Lebow cannot establish that the Court has: (1) general jurisdiction over Huston Buick; or (2) specific jurisdiction over Huston Buick. Mot.

at 9–13. Lebow does not dispute that the Court lacks general jurisdiction over Huston Buick,[4] but rather contends that the Court has specific jurisdiction over Huston Buick. Opp'n at 9–11.

### a. The Court lacks specific jurisdiction over Huston Buick.

Huston Buick alleges that the Court lacks specific jurisdiction over Huston Buick because Huston Buick has no sufficient contacts with California. Mot. at 12–13. Huston Buick contends that Lebow has failed to satisfy the three-prong test requiring (1) that the defendant purposefully avail themselves of the forum state; (2) that the claim arises out of the defendant's forum-related activities; and (3) that the exercise of personal jurisdiction comport with fair play and substantial justice. *Id.*

#### i. Lebow has not adequately pleaded that Huston Buick purposefully directed itself toward California.

Lebow's SAC contains new allegations relevant to our analysis under this prong, which requires the Court to reconsider its analysis. As with the prior motion, Huston Buick contends that it has never expressly aimed its actions toward the state of California under the second prong of the purposeful direction test. *Id.* Lebow again alleges, to the contrary, that Huston Buick engaged in a course of conduct that negatively impacted him while he resided in California and that Huston Buick should have known that its actions would impact a California resident. Opp'n at 9–10. As in the FAC, Lebow's SAC alleges that Huston Buick has contact with California because its alleged conduct was against a California resident in violation of California law. Opp'n at 9–10.

The Ninth Circuit has held that under some circumstances, a defendant's transaction with a resident of the forum may be a sufficient basis for specific jurisdiction. For example, in *Dole Food Company, Inc. v. Watts*, the court found that the defendants' conduct gave rise to specific jurisdiction in California where (1) they "communicated directly" with the plaintiff's California managers to induce them to "enter into significant and detrimental contractual arrangements" and (2) the plaintiff's principal place of business was in California, meaning that the harm caused by

---

[4] Because Lebow does not dispute that the Court lacks general jurisdiction over Huston Buick, the Court need not consider Huston Buick's argument that general jurisdiction does not exist because Huston Buick has no contacts with California that could support general jurisdiction.

defendants' conduct was suffered in California. 303 F.3d 1104, 1112–14 (9th Cir. 2002). Similarly, in *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, the court found that the defendant's alleged tortious acts aimed at a plaintiff—interference in the plaintiff's contractual and economic relationships—whom the defendant knew was a resident of the forum state satisfied the "express aiming" requirement of the effects test and therefore gave rise to specific jurisdiction. 328 F.3d 1122, 1131 (9th Cir. 2003).

Since those cases were decided, however, the U.S. Supreme Court has clarified that even when a nonresident's conduct might have caused an effect on a plaintiff who happens to be in the forum state and the defendant knew the plaintiff resided therein, that alone is insufficient to satisfy the "purposeful direction" test. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). In *Walden*, the Court held that it is "impermissibl[e]" to "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. Accordingly, the focus should be on the defendant's own contacts with the forum, not on the defendant's knowledge of the plaintiff's strong forum connections. *See id.* The Court explained that in that case: "Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* This is the crux of Lebow's SAC: that Huston Buick created sufficient contacts with California because it intentionally directed its conduct at a plaintiff who he knew was a California resident. *See* SAC ¶ 48 ("Defendant knew both that Plaintiff was a California Resident and that Plaintiff was 75 years of age at the time that it facilitated the identity thief's illegal purchase of a vehicle . . . as the identity thief used a driver's license that showed both Plaintiff's state of residence and age to Defendant."). For this reason, Lebow's new allegation that Huston Buick knew Lebow was a California resident is insufficient to establish sufficient contacts.[5]

---

[5] As before, Huston Buick submitted an affidavit by Samuel Huston asserting: "[A]ccording to my review of sales records regarding the sale of the Vehicle, the alleged identity thief provided proof of residence in Florida

Lebow's SAC presents other new allegations as well. The only new allegations that go to Huston Buick's contacts with California rather than its contacts with Lebow are the following: (1) Huston Buick "expressly avails itself of the Laws of the State of California governing purchases and financing transactions including those transacted through or in connection with Defendant's website," SAC ¶ 53; and (2) Huston Buick "specifically transacts with California Residents . . . via online purchases because residents of such States are commonly willing to pay a premium for vehicles and commonly pay a price for vehicles in Defendant's vehicles that is over and above the price that local consumers are willing and/or able to pay," *id.* ¶ 55.

Just as before, Huston Buick submitted a declaration asserting that "[t]he vast majority of Huston Buick's sales are to Florida residents, and any sales to out-of-state residents are exceedingly rare and incidental and transacted under federal and Florida law." Huston Decl. ¶ 7. Accordingly, Lebow's allegations to the contrary remain controverted and are unsupported by anything in the Lebow declaration or any other evidence. As stated previously, the Court may not assume the truth of allegations in a pleading which are contradicted by affidavit. *Mavrix Photo*, 647 F.3d at 1223.

---

and took delivery of the Vehicle in Orlando, Florida." Huston Decl. ¶ 8. Lebow thereafter submitted an affidavit from himself stating:

> 6. At the time that Defendant made hard enquiries into my credit, **they possessed a copy of my driver's license which is a California Driver's License and lists my residence in the State of California**;
> 7. The first time Defendant ran my credit, **my credit report listed my address as being in the State of California, and there was nothing on my credit to indicate to them that I resided anywhere other than the State of California** and that were I to be the person attempting to purchase, and finance said purchase, a vehicle from Defendant, **then I would naturally be making said purchase from the State of California** . . . .

Lebow Decl. ¶¶ 6–7 (emphasis added).

As discussed previously, although the court may not assume the truth of allegations in a pleading which are contradicted by affidavit, conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Mavrix Photo*, 647 F.3d at 1223; *Unocal*, 248 F.3d at 922.

Here, the Court resolves this factual dispute between conflicting affidavits in favor of Lebow. Huston Buick, given that it had access to a copy of Lebow's California Driver's License listing his state of residence in California and his credit report listed his address as residing in California, should at least have known or been cognizant of the possibility that it was dealing with a California resident. However, as discussed, the Court finds this knowledge of Lebow's residence insufficient to create sufficient contacts between Huston Buick and California.

And even if the Court did assume the truth of these allegations, they do not allege the sort of conduct which connects Huston Buick to California in a meaningful way. *Walden*, 571 U.S. at 290 ("The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Finally, it is worth noting that in Lebow's case, just as in *Walden*, his injury does not evince a connection between Huston Buick and California. His injury is "not the sort of effect that is tethered to [California] in any meaningful way." *Id.* To the extent that he was injured, Lebow would have experienced this same injury in any other place where he happened to be.

As a result, the Court finds that Lebow does not pleads facts sufficient to establish that Huston Buick expressly aimed conduct at, or purposefully directed itself at, California.

Because the Court finds that Huston Buick did not purposefully direct itself at California under governing law, the Court may not exercise specific jurisdiction over Huston Buick. The Court therefore GRANTS the Motion to Dismiss.[6]

### b. Leave to Amend

Huston Buick contends that the Court should dismiss the SAC without leave to amend because Lebow was already granted leave to amend his complaint once, made only minor amendments that failed to remedy the jurisdictional defects present in the FAC, and any further efforts would be futile because personal jurisdiction does not exist. Mot. at 16. Although a district court should generally grant leave to amend freely, "a district court may dismiss without leave where . . . amendment would be futile." *Cervantes*, 656 F.3d at 1041.

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (finding leave to amend futile where appellants "had already been put on notice once before of the same defects that led to the dismissal of their First Amended Complaint" but nonetheless submitted a First

---

[6] Because the Court finds that Lebow's claims do not arise out of Huston Buick's activities in California, it need not consider whether, under the second prong, the claim is one which arises out of or relates to the defendant's forum-related activities, or whether, under the third prong, the exercise of jurisdiction "comport[s] with fair play and substantial justice" or is reasonable. *Picot*, 780 F.3d at 1211. Moreover, the Court need not consider Huston Buick's alternative argument, that the case should be transferred.

1  Amended Complaint that "contained the same defects as their original complaint"). Based on
2  Lebow's SAC, Opposition, and discussion during the June 30, 2022 hearing, the Court believes that
3  granting leave to amend would be futile. Lebow has already been put on notice once before of the
4  same defects for which the Court is dismissing his SAC today—namely the absence of sufficient
5  contacts between Huston Buick and California outside of the allegations regarding the plaintiff;
6  however, the SAC nonetheless contains the same defects as the FAC. Moreover, during the hearing,
7  Lebow failed to state what additional facts he would plead if given leave to amend. Accordingly, the
8  Court finds amendment to be futile.

**CONCLUSION**

In light of the foregoing, the Court hereby GRANTS the Motion to Dismiss WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated: October 13, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge